**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division**

| | |
|---|---|
| **DENNIS FROST,** ) | |
|                **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Case No. 08-2106** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| ) | |
|                **Defendant.** ) | |

# O R D E R

In October 2007, Administrative Law Judge Gerard J. Rickert ("ALJ") denied Plaintiff Dennis Frost's application for disability insurance benefits and supplemental security income. The ALJ based this decision on his finding that while Plaintiff could no longer perform his past relevant work, he could perform other work that exists in significant numbers in the national economy.

In May 2008, Plaintiff filed a Complaint (#5) against Defendant, Michael Astrue, Commissioner of Social Security, seeking review of the ALJ's decision to deny him disability insurance benefits and supplemental security income. In December 2008, Plaintiff filed a Motion for Summary Judgment (#14). In February 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#19). In March 2009, Plaintiff filed a Response to Commissioner's Memorandum in Support of Motion for Summary Affirmance (#20). After reviewing the record and the parties' memoranda, this Court **GRANTS** Plaintiff's motion for Summary Judgment **(#14)**.

### I. Background
### A. Procedural Background

In July 2004, Plaintiff filed an application for disability insurance benefits and supplemental security income claiming he became disabled in October 2003 due to neck, back, and knee pain as well as depression. (R. 76.) The Social Security Administration ("SSA") denied Plaintiff's application initially and upon reconsideration. (R. 39, 34.) Plaintiff entered a

timely request for a hearing. (R. 31.) The ALJ conducted the hearing in July 2007. (R. 46.) Plaintiff and a vocational expert testified at this hearing. (R. 452.) The ALJ issued an unfavorable decision in October 2007. (R. 10-12.)

The Appeals Council ("AC") denied Plaintiff's request for review in February 2008. (R. 4-7.) The AC's decision made the ALJ's ruling the Commissioner's final decision. In May 2008, Plaintiff appealed this decision by filing a complaint with this Court pursuant to 42 U.S.C. § 405(g), asking the Court to remand the case to the Commissioner for rehearing.

### B. Plaintiff's Background

Plaintiff is 53 years old. He was 47 at the time he applied for social security. (R. 240, 76.) Plaintiff completed school through the 11th grade. (R. 457.) He previously worked as a stocker at Wal-Mart, a sorter at a newspaper business, and a yard helper at Kirchner's Lumber. (R. 133.)

In May 2003, Plaintiff was working in the lumber yard carrying a piece of masonite when the wind caused the masonite to strike him in the head and neck. (R. 410.) The accident caused him neck pain for which he initially consulted his treating physician Dr. Julian Vassey. (R. 240.) Dr. Vassey sent him for x-rays and physical therapy. (R. 239.)

In September 2003, Plaintiff consulted Dr. Robert Huler and Dr. James Kohlmann for his continuing neck pain. Both doctors agreed that a benign hemangioma (tumor) and a small disc herniation might be causing his neck pain. Both doctors also agreed that he was physically able to perform light work. (R. 161, 413.)

In September 2004, after Plaintiff filed his application for benefits, Dr. Sandra Bilinsky performed a residual functional capacity examination. She also determined that Plaintiff could perform light work. (R. 183-90.)

In March 2005, at the request of the Department of Disability Determination Services, Dr. Stephen Vincent evaluated Plaintiff's mental condition. (R. 191.) Dr. Vincent found Plaintiff oriented to person, place, time, and situation. Dr. Vincent opined that Plaintiff's thought process was logical and relevant, but "somewhat slow and deliberate, interfered with by preoccupation with pain." (R. 192.) Dr. Vincent also stated that Plaintiff's history of chronic pain and depression "make[s] it quite difficult for him to function . . . [and] interfere[s] with his focus and concentration and thinking skills." (R. 192.) Dr. Vincent noted that Plaintiff would be able to manage his own finances. (R. 193.)

In April 2005, Dr. Carl Hermsmeyer completed a Psychiatric Review Technique form to assess Plaintiff's mental capabilities. (R. 166-82.) He found that Plaintiff suffered from a mild restriction in activities of daily living, moderate difficulty in social functioning, moderate difficulty in maintaining concentration, persistence, or pace, and no episodes of decompensation. (R. 176.) Dr. Hermsmeyer opined that, while none of Plaintiff's symptoms met or equaled any medical listing, they were "more than non severe." (R. 182.) Dr. Hermsmeyer stated that Plaintiff had the capacity to "perform simple one and two-step tasks at a constant pace." (R. 182.)

In May 2005, Plaintiff began treatment with the Coles County Medical Center ("CCMC") for his depression and suicidal ideations. (R. 402.) He continued treatment with CCMC throughout the relevant period.

In February 2007, Dr. Vassay wrote a letter which was submitted to the Office of Hearings and Appeals. Dr. Vassey stated that Plaintiff was no longer able to perform the heavy lifting necessary for him to work in a lumber yard, but he was able to perform light work. (R. 409.)

In June 2007, Dr. Howard Levine, Plaintiff's psychologist, wrote a letter expressing his opinion regarding Plaintiff's ability to work full time. Dr. Levine stated that Plaintiff's depression had been worsening during the past 12 months and continued to be resistant to

3

treatment.  Dr. Levine opined that Plaintiff's depression would significantly impair his ability "to conform to the customary work pressures that one can expect in competitive employment." (R. 428.)  Dr. Levine further stated that Plaintiff's depression presented "a significant impairment in his capability for full time employment at even light and sedentary levels." (R. 429.)

During this period, when he was able to afford them, Plaintiff took the following medications.  For his depression and irritability, Plaintiff used Zoloft, Wellbutrin, Lamictal, and Cymbalta.  (R. 271, 234.)  His psychiatrist doubled his Wellbutrin in February 2007.  (R. 271.) For his pain and limited range of motion, Plaintiff took Neurontin, Flexeril, Ibuprofen, Vicodin, Hydrocodone, and Skelaxin.  (R. 237, 238, 232, 460, 233.)  Not all of the pain medication was taken simultaneously.

### C.  Plaintiff's Testimony at the Hearing

The ALJ conducted the hearing in July 2007.  At the hearing, both Plaintiff and vocational expert Ronald Malik testified.

Plaintiff testified that he lives in a motor home with his two adult sons.  He testified that while he could read and write, he could not reliably perform calculations.  Plaintiff stated that in May 2003 a piece of masonite hit his head.  Subsequent tests conducted after the incident showed bone spurs and a tumor between his C4 and C3 vertebrae.  Plaintiff also testified he cannot bend his right knee and he experiences numbness in his hands, possibly attributable to carpal tunnel, that makes it difficult to grip objects.

Plaintiff was unsure of all the medications he was taking.  He was able to remember Wellbutrin, Hydrocodone, and Flexeril.  He also knew he was on a medication that began with "L," and the ALJ was able to deduce he meant Lamictal.  Plaintiff also confirmed that he was taking Zoloft and Ibuprofen.

When asked about his neck pain, Plaintiff indicated that he had no pain prior to his accident in May. Plaintiff indicated that, since the accident, he can only turn his neck to the right and that it causes him constant pain and prevents him from sleeping at night.

Plaintiff also testified that he experiences pain in his knee and lower back for which he uses a cane. He was given the cane "in 1990 something," before he stopped working. (R. 461.) Plaintiff stated that two surgeries to his right knee had not improved his pain.

Plaintiff has been taking Hydrocodone for his pain, but not consistently because he is not always able to afford it. He indicated that even when he takes Hydrocodone, it does not always control his pain. Plaintiff indicated that during some periods he took twice the amount of the medication prescribed.

Plaintiff next testified about his treatment for depression, stating that the medication his doctors prescribe does not always help. He testified that his inconsistent response to the medication is the reason his doctors gave him a crisis hotline number, but he has only called the hotline once. Plaintiff has frequent thoughts of suicide, but no specific plans.

Plaintiff said his inability to work and contribute income to the household has made him feel as though he would be "better off dead." (R. 466.) He expresses guilt about depending so much on his sons. Plaintiff testified that he is able to take care of his personal needs, but that his sons do all the housework, laundry, and yard work. He is able to go to the grocery store occasionally, but avoids that task if possible for fear his knee will give out. Plaintiff also said he has made dinner "a few times." (R. 467.) Plaintiff stated that he is able to drive, but rarely does because his sons generally drive him. Plaintiff testified that he no longer has any hobbies nor does he belong to any social clubs or engage in any social activities.

The vocational expert testified that, considering Plaintiff's age, education, and physical condition, Plaintiff could perform the jobs of cashier II, bindery feeder, parking lot attendant, or small product assembler. The vocational expert indicated that these jobs exist in significant numbers in the local economy.

### D.  The ALJ's Decision

To be found eligible for social security disability insurance and supplemental income, a claimant must show that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that is expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 416(i)(1). To determine whether a claimant meets this criteria, the ALJ must engage in a five step process. 20 C.F.R. § 404.1520(a)(4). If at any step, the ALJ conclusively determines that the claimant is or is not disabled, the inquiry stops. If the ALJ cannot make a definitive determination at a particular step, the inquiry continues to the next step. *Id.* The burden of proof is on the claimant until step five. At step five, the Commissioner bears the burden of showing that the claimant could perform other work. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

At step one, the ALJ considers the claimant's work activity. If the claimant is currently performing substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as work activity that is both substantial and gainful. Substantial work activity involves doing significant physical or mental activities. Gainful work activity is work activity that is done for pay or profit. 20 C.F.R. § 404.1572. If the claimant has not engaged in substantial gainful activity, then the inquiry moves to the next step.

At step two, the ALJ considers the severity of the claimant's mental and physical impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have one or a combination of severe, medically determinable mental or physical impairments that have lasted for 12 months, then the inquiry moves to the next step.

At step three, the ALJ again considers the severity of the claimants's medical impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If the plaintiff's impairment(s) meets or equals an impairment already listed, then the claimant is disabled. If it does not, then the inquiry proceeds to the next step.

At this point, the ALJ assesses the claimant's residual functional capacity based on all of the relevant medical and other evidence in the case record. 20 C.F.R. § 404.1520(e). The specific procedure for determining residual functional capacity is explained in 20 C.F.R. § 404.1545.

At step four, the ALJ considers the claimant's residual functional capacity to determine if the claimant can still perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the claimant cannot perform his past relevant work, then the inquiry moves to the final step.

At step five, the ALJ considers the plaintiff's residual functional capacity, age, education, and work experience to determine whether the claimant can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can perform other work that exists in significant numbers in the economy, then the claimant is not disabled.

In the present case, at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity in over 12 months. At the second step, the ALJ found that Plaintiff suffered severe impairments due to degenerative joint disease of the spine and depression. (R. 15.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At the fourth step, the ALJ determined that Plaintiff could no longer perform his past relevant work. (R. 16.) However, at the fifth step, the ALJ determined that Plaintiff had the residual functional capacity to perform light work and, therefore, he was not disabled. (R. 17.)

## II.  Standard of Review

The ALJ's decision is subject to review by this Court pursuant to 42 U.S.C. § 405(g). This Court does not review the facts *de novo*, rather, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.*  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Thus, if reasonable minds could differ as to whether or not a plaintiff is entitled to benefits, the Court must uphold the ALJ's decision.  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).  This Court's task is to determine whether or not the ALJ's decision has substantial support in the record.  If it does, then the Court must uphold the ALJ's decision.  *Books*, 91 F.3d at 977-78.

The Court also defers to the ALJ's credibility findings.  This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does.  *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006).  Therefore, courts uphold an ALJ's credibility finding as long as the record affords some support for the finding.

## III.  Discussion

Plaintiff argues the ALJ failed to sufficiently articulate his assessment of the evidence and made an improper credibility finding.  Plaintiff therefore contends the ALJ's decision is not supported by substantial evidence.

### A.  Failure to Articulate

Plaintiff first argues that the ALJ failed to sufficiently articulate his assessment of the evidence making it impossible for a reviewer to determine whether the ALJ reviewed all of the relevant evidence in the case.  Plaintiff specifically contends that the ALJ's lack of citation to Plaintiff's mental health records precludes a reviewer from determining what part of the records the ALJ consulted.  Plaintiff also notes that the ALJ failed to mention the medication Plaintiff was taking for pain and depression.

An ALJ is not required to articulate his assessment of every piece of evidence and testimony submitted. The ALJ has done enough if the reviewing court can "trace the path of the ALJ's reasoning." *Carson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)). However, the ALJ must explain why he rejected uncontroverted evidence so the reviewing court will know that the evidence was rejected rather than forgotten or considered irrelevant. *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984); *Stephens*, 766 F.2d at 287.

In the present case, the ALJ did not meet this standard. The ALJ referred to the CCMC mental health records with only one sentence and cites the entirety of Exhibit B8F as the basis for his statement. (R. 16.) Exhibit B8F is 135 pages long and covers two years of treatment for depression and related problems. (R. 2, 269-404.) Some evidence in these records would support the ALJ's conclusion that Plaintiff's mental health was improving, but other evidence suggests the opposite. For instance, the ALJ specifically stated that Plaintiff suffers no adverse side effects from his medications, but he did not discuss Plaintiff's medications for depression and pain, nor did he discuss the treatment Plaintiff received at CCMC. (R. 19.) This omission is notable because Plaintiff's psychiatrist, Dr. Daphne Mauer, doubled his Wellbutrin dosage five months before the hearing. (R. 278.) The ALJ also did not address aspects of the treatment records that indicated Plaintiff still suffered from suicidal ideations and feelings of worthlessness.

The Commissioner's brief provides citations to specific parts of Exhibit B8F that the ALJ referred to generally. The problem with the Commissioner's citations is that we do not know whether the ALJ in fact relied on those portions of the record. The Court is limited to the reasons provided in the ALJ's decision; it cannot consider Defendant's *post hoc* explanations for the ALJ's decision. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."). Furthermore, while the Commissioner's references to the record show that some parts of the

9

record support the ALJ's decision, the Commissioner's disscussion does not cure the ALJ'S failure to address those aspects of the record that would support a contrary decision.

An ALJ is not required to articulate his reasons for rejecting every piece of evidence. *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).  Nevertheless, the ALJ must consider all evidence presented and must not ignore entire lines of evidence by selectively discussing only the evidence supporting his conclusion.  20 C.F.R. § 404.1529(c)(3); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ's limited references to Plaintiff's mental health records preclude this Court from determining which parts of the record the ALJ relied upon or why he disregarded certain information.  This level of articulation falls below the standard set by the Seventh Circuit court.  Accordingly, the Court remands the case so the ALJ can explain his reasoning.

### B.  The ALJ's Credibility Finding

Plaintiff next argues that the ALJ improperly dismissed Plaintiff's subjective complaints about his pain and depression.  Plaintiff contends that the ALJ's credibility finding violates the requirements of 20 C.F.R. § 404.1529 and SSR 96-7p.  The regulations list seven criteria that an ALJ must consider when evaluating a claimant's subjective complaints, including the following: (1) claimant's daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness, and side effects of medication, (5) treatment other than medication, (6) any measures used to alleviate symptoms, and (7) other factors concerning claimant's functional limitations or restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529*;* SSR 96-7p.

When evaluating an ALJ's credibility determination courts give great deference to the ALJ's assessment because of the ALJ's ability to see and hear witnesses who testify at the trial. *Sims*, 442 F.3d at 537-38; *Edwards v. Sullivan*, 985 F.2d 334, 337 (1993) (quoting *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989)).  Therefore, the ALJ's credibility determinations will generally not be disturbed as long as they have some support in the record.  *Edwards*, 985 F.2d at 337 (quoting *Anderson v. Sullivan*, 925 F.2d 220, 222 (7th Cir. 1991)).  In a recent

decision, the Seventh Circuit court stated that a court reviewing a credibility determination "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)).

In this case, the ALJ stated that while he was certain Plaintiff suffered some pain, other evidence in the record contradicted a total impairment. (R. 18.) In assessing the credibility of Plaintiff's statements, the ALJ noted that the medical evidence did not show that Plaintiff is completely disabled and unable to work, and no treating or examining physician had indicated that Plaintiff is unable to work. (R. 19.) The ALJ also noted that Plaintiff had indicated he is still able to care for himself, drive an automobile, and perform some household tasks. (R. 19.) Thus, the ALJ articulated his reasons for finding Plaintiff's claim of total impairment was not credible, and the Court cannot conclude that his credibility determination was patently wrong.

### C. Substantial Evidence

Finally, Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, he contends that the ALJ should have given Dr. Levine's opinion controlling weight.

The Regulations state that in making a finding as to a claimant's alleged impairments, an ALJ will defer to the medical opinion of a treating physician when the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case." 20 C.F.R. § 404.1527(d)(2).

Courts will uphold an ALJ's determination not to give controlling weight to the medical opinion of a treating source when that determination is based on a thorough consideration of all relevant medical evidence on the record and where the ALJ identifies and explains the sufficiency of any inconsistent or contradictory medical evidence on which the ALJ relies in

rejecting the treating source's opinion. *See Boiles v. Barnhart*, 395 F.3d 421, 425-27 (7th Cir. 2005) (remanding where the ALJ's rejection of the treating physician's opinion "did not explain how other evidence in the record contradicted [the treating source]'s opinion"); *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) (remanding where the ALJ explained his reasons for rejecting the treating source's opinion, but that explanation ignored or misconstrued significant parts of the medical record); *Johansen v. Barnhart*, 314 F.3d 283, 287-88 (7th Cir. 2002) (holding that the ALJ's refusal to give controlling weight was proper where the ALJ properly identified inconsistent medical evidence and adequately discussed his reasons for relying on the inconsistent evidence).

The ALJ quoted Dr. Levine's June 2007 opinion that Plaintiff's depression presents a "significant impairment in his capacity for full time employment at even light and sedentary levels." (R. 16, quoting R. 429.) The ALJ did not afford this opinion significant probative value because (1) it addressed Plaintiff's physical limitations even though Dr. Levine, the clinical director at the facility where Plaintiff received mental health treatment, was not a medical doctor; (2) Dr. Levine noted that Plaintiff's poverty complicated the effect of his mental impairment and may have relied on that factor in reaching his conclusion; and (3) the opinion is not supported by objective medical evidence or by the treatment notes from the mental health center where Plaintiff was treated.

Defendant contends that the ALJ recognized that Dr. Levine was not qualified to assess Plaintiff's physical work capacity and that the ALJ concluded that Dr. Levine was not acting as an objective clinical analyst. As a result, the ALJ reasonably decided not to afford the opinion controlling weight.

Here, the ALJ quoted only that portion of Dr. Levine's letter that referred to Plaintiff's ability to perform light and sedentary work, and his rejection is based on an assumption that Dr. Levine was addressing, at least in part, Plaintiff's physical condition. Contrary to the ALJ's interpretation, Dr. Levine's statement does not address Plaintiff's physical condition. Instead, it addresses the effect of Plaintiff's depression on his ability to work at any exertional level.

Furthermore, Dr. Levine's letter also addressed Plaintiff's ability to think and concentrate, conform to the customary work pressures of competitive employment, follow complicated and multi-step tasks, and comply with productivity and attendance expectations. (R. 428-29.) The ALJ did not address these mental health aspects of Dr. Levine's opinion. The ALJ referred to Dr. Levine's mental health assessment only when stating that Dr. Levine's conclusions about Plaintiff's ability to work may have been influenced by the doctor's belief that disability benefits would have a therapeutic effect on Plaintiff's mental health. (R. 16.)

An ALJ is required to build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002). The ALJ's statement that Dr. Levine's opinion was not supported by objective medical evidence or treatment notes, without any information or reference to evidence in the record that is inconsistent with that opinion, fails to build this bridge and prevents the Court from evaluating the ALJ's rejection of Dr. Levine's opinion. Accordingly, on remand, the Court directs the ALJ to explain in greater detail his reasons for rejecting the opinions Dr. Levine expressed in his letter.

## IV. Summary

For the reasons stated above, this Court **GRANTS** Plaintiff's Motion for Summary Judgment **(#14)** and orders that the case be remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Order. Remand pursuant to 42 U.S.C. § 405(g), sentence four, will terminate the case. *Shalala v. Shaefer*, 509 U.S. 292, 299 (1993) (stating that sentence-four remand order terminates the case).

ENTER this 22nd day of June, 2009.

              s/ DAVID G. BERNTHAL
              U.S. MAGISTRATE JUDGE